## Baukal v. Acme Markets, Inc.

*Martin Heller*, for plaintiff.

*Joseph R. Thompson*, for defendant.

WEINROTT, J., February 2, 1966.—This case is before the court on plaintiff's petition, unanswered by defendant, for an order on defendant to produce for inspection and copying a written statement assertedly

made by plaintiff's decedent to employes of defendant immediately after an accident. Defendant contends that Pennsylvania Rule of Civil Procedure 4011(d) explicitly relieves him of any obligation not only to exhibit the statement, but even to disclose its existence.

Plaintiff has sued as administrator for the wrongful death of his wife. His petition declares that she fell on a defective sidewalk in front of defendant's premises, was helped into the building by employes of defendant, and while in a state of acute distress and receiving first aid at their hands, gave them a written statement. She was not given a copy. She died a month later. Plaintiff has been unable to find any eyewitnesses, and the statement is the only existing account of the cause of the fall and the circumstances surrounding it. His petition for production is filed under Pa. R. C. P. 4009.

It is pertinent to observe that previously, plaintiff had filed brief interrogatories addressed to defendant asking for eyewitnesses, other witnesses, if any, and a description of the accident, and that defendant, without answering the last question, replied that it knew of no witnesses other than two named women, who had not seen the occurrence but were nearby. Meanwhile, defendant had filed its own interrogatories to plaintiff, 50 in number, with subdivisions, including two asking for full details of the accident and the specific acts of negligence alleged. The latter, obviously, are the very facts plaintiff is seeking to obtain from an inspection of his deceased wife's statement. He has not yet filed answers to defendant's interrogatories.

Rule 4009 declares that "subject to the limitations provided by Rule 4011" the court, on petition, may order a party to produce and permit the inspection and copying of documents, papers and other tangible things in his possession or control. Rule 4011, as amended, provides that no discovery or inspection shall be permitted which "(d) would disclose the existence or lo-

cation of reports, memoranda, statements, information or other things made or secured by any person or party in anticipation of litigation or in preparation for trial or would obtain any such thing from a party or his insurer, or the attorney or agent of either of them, other than information as to the identity or whereabouts of witnesses".

Defendant's one-page brief relies on the latter exemption, and declares that "if there is any such statement in existence it was clearly secured by defendant in anticipation of litigation".

We will say at the outset that we by no means agree with such a conclusion. Since plaintiff's petition is unanswered, we accept its averments for the purpose of the pending argument. We take it that there was a statement, and that it was made immediately after the accident to employes of defendant, who were rendering first aid. We cannot assume that they were investigators or adjusters, or persons whose duty it was to obtain evidence in preparation for a lawsuit.

However, we do not propose to rest a decision on so narrow a ground. We believe that even if the employes were investigators, or even if they took decedent's statement in anticipation of litigation, the circumstances of this case call for a disclosure and production.

Discovery, as all of us are aware, was unknown at common law. The early English concept of civil litigation envisioned a strictly adversary proceeding, a step above the ancient trial by battle, and substituting advocates fighting with their wits for champions fighting with their bodies. The "dog eat dog" philosophy then still prevalent led naturally to trial by surprise, trial by gamesmanship, the effort to catch an opponent napping, and to win by cleverness and cunning rather than by merit. Chancery intervened to a limited degree and entertained bills for discovery. But it was not

until the middle of the last century that the New York Code of Procedure paved the way to the modern expanded and much more enlightened system of pretrial disclosure.

The Federal Rules of Civil Procedure, 90 years later, set up in rules 26 to 37 a comprehensive system of depositions and discovery. Rule 34, on which our own rule 4009 is based, is broader than our rule, and gives the court a large discretion to compel the production of documents without the specific limitations of our rule 4011, though with power in the court to impose restrictions, if it deems them proper.

In 1947, the landmark case of Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451, went up from our District Court for the Eastern District of Pennsylvania through the Third Circuit Court of Appeals to the United States Supreme Court. The tugboat J. M. Taylor had sunk in the Delaware near Philadelphia, and five of the crew of nine had been drowned. The owners of the tug employed counsel to defend anticipated lawsuits. The administrator of the estate of one of the drowned men sued, and followed with a demand on defendant's attorney for disclosure of information he had gathered from the survivors and other sources. The district court ordered disclosure. The third circuit reversed the lower court. Plaintiff appealed. The Supreme Court, affirming the circuit court (now the court of appeals), ruled that the right to discovery was not unbounded; the right of access to evidence was undoubted, but it should not infringe on the privilege of confidential relationship between attorney and client, unless a clear hardship and necessity were shown; without such hardship, a lawyer's "work product" was exempt from disclosure, and plaintiff had proved no paramount necessity.

It will be observed that in the Hickman case, plaintiff did not seek his decedent's statement, but informa-

tion obtained from third persons, witnesses who still were alive and available to plaintiff for questioning, so that no hardship to plaintiff would necessarily follow from a refusal to order defendant's attorney to open his files. Lawyers, however, found much to puzzle them in the decision. Our rules 4001 and 4025, adopted in 1950 in the wake of Hickman, were an effort to clear the air, and, in particular, rule 4011 was an endeavor to free from doubt the limits to the right of inspection.

Rule 4011(d) exempts from inspection "statements". It does not say whose statements. On its face, its prohibition is flat; it does not specifically leave the loophole of hardship or necessity. Is it to be interpreted literally, and to mean that no matter how clear the need, no matter how harsh the result, under no circumstances whatever may a statement of anyone, including a party, and including a dead claimant, be ordered produced for inspection?

Rule 126 applies to all other rules. It says:

"The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable".

Then, in rule 127(b) the Supreme Court put a brake on too free an interpretation of its regulations:

"When the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit".

At the same time, however, the court laid down in rule 128(a), among guides to be followed in ascertaining the intention of the rules, the presumption "that the Supreme Court does not intend a result that is . . . unreasonable".

With these admonitions in mind, we return to our problem. Rule 4009, permitting an order for inspection, is to be liberally construed. But 4011 sets limits. It forbids the inspection of "statements". Is that word clear and free from ambiguity within the meaning of

127 (b) ? Is the prohibition absolute and without exception? Would it be reasonable to conclude that no matter what the exigency, no matter what the circumstances, nobody's statement, whether he be plaintiff or defendant, alive or dead, shall ever be ordered disclosed? Or is that conclusion "unreasonable" within 128 (a) ?

We think it is. We think that 4011 was adopted with the Hickman decision in mind. That case did not involve the statement of a party or a party's decedent. It involved rather the product of a lawyer's investigation and effort. There was no imperative need for disclosure of that lawyer's product; plaintiff could have duplicated the lawyer's work and got what he needed. In our own case, we have the statement of one who, if alive, would have been a party. It was made not as a result of a lawyer's effort, but to employes of defendant, very likely as a matter of defendant's ordinary business procedure. Plaintiff does not seek to pry into a lawyer's private file. And finally, the maker of the statement is dead, and plaintiff says the statement is his only source of vital information. His need is impelling; his hardship clear.

Our conclusion is that the Supreme Court did not intend the flat and literal application of Rule 4011 (d) to every situation without exception, without regard to necessity, without regard to the requirements of justice. Our Supreme Court itself has well said: "Procedural rules are not ends in themselves but means whereby justice, as expressed in legal principles, is administered. They are not to be exalted to the status of substantive objectives": McKay v. Beatty, 348 Pa. 286; Hampsey v. Duerr, 401 Pa. 578, 581. The rules governing deposition and discovery are remedial. It is hornbook law that remedial legislation is in particular to be construed liberally: 5 Anderson Pa. Civ. Prac. §4001, page 4, and cases cited.

We are fully aware that a number of lower court

judges have wrestled with the problem of forcing disclosure of a party's statement and have come up with varying conclusions. We are aware that in Fahey v. Philadelphia Transportation Co., 15 D. & C. 2d 555 (1958), our highly respected colleague President Judge Alessandroni, though deploring the "cat and mouse game" involved, declared himself reluctantly bound by what he regarded as "the plain language of the rules", and refused to order production of a statement made by a plaintiff the day after her accident to an investigator employed by defendant. To the contrary was the earlier case of Marsh v. Mertz, 32 D. & C. 117 (Luzerne County, 1938), on the theory that a party was entitled to pretrial production of a paper in which he and his opponent had a "common interest"; but that case antedated the rules governing discovery and was decided under general law.

We are aware of divergent decisions in the analogous but not identical situation where one party directs interrogatories to the other relating to details of an occurrence, and the party questioned declines to answer until his opponent shows him the statement describing the occurrence which he had previously given to his opponent's agent. Judge Montgomery, of Allegheny County, deemed that questioning under such circumstances savored of bad faith, and refused to impose sanctions for declining to answer the questions unless the party in possession of the statement produced it: Perkins v. Pittsburgh Railways Co., 6 D. & C. 2d 655 (1955). President Judge Gold, of our own county, agreed: Davis v. Zazow, 23 D. & C. 2d 143 (1960). Judge Griffiths, of our county, distinguished those cases where the statement was merely the investigator's version of plaintiff's words, but without his signature: Benezet v. Westinghouse Electric Supply Co., 29 D. & C. 2d 71 (1962). The Mercer County Court dissents from the Perkins and Davis cases:

Gates v. Nationwide Mutual Insurance Co., 32 D. & C. 2d 297 (C. P. Mercer, 1964) ; Santell v. Nespor, 6 Mercer 205 (1963).

Finally, we are aware also that in 1956 the American Bar Association published the "Statements of Principles with Respect to the Practice of Law" formulated by lawyers and professional groups to improve practices, in which, among other matters, it was agreed between the lawyers and representatives of insurance adjusters that any witness, including a party, who makes a statement to an adjuster is entitled on request to a copy of it.

Incidentally, the Perkins and Davis situations exist to some degree in the case at bar. It happens that defendant has filed interrogatories to plaintiff, two of which relate to the details of the accident. Plaintiff has not yet filed answers, but he also has not formally refused to answer, and defendant has not applied for sanctions. Nevertheless, the aura of bad faith relied on in the two cases just mentioned exists here also. Though those cases did not involve direct orders for production of plaintiff's statement, the implication is clear that it should be produced. In our own case, we do not have an application for sanctions for refusal of plaintiff to answer questions, and we do have a direct motion of plaintiff for production of his decedent's statement. A forthright handling of the situation, we believe, requires the court to go the entire length, and order the recalcitrant defendant to produce the statement.

What is a party's reason in the average case to withhold a statement made by his adversary? It must be in the hope of springing a surprise at the trial. The party goes on the stand and describes the accident. His cross-examiner pounces on him with his prior statement containing a contradiction or variance. At the same time, he looks knowingly at the jury. Is the witness neces-

sarily lying? May he not in the intervening months, or years, have forgotten some of the precise details? Is it not in the interests of justice that he see what he originally said, before the trial, so that he may correct his honestly varying recollection by comparison with what he said right after the accident? Should the court countenance concealment and surprise and the playing of games deplored by President Judge Alessandroni? Does not the application of rule 4011(d) in such case thwart justice rather than promote it?

To our mind it does. We do not need to go to the length of waiving rule 4011(d) in this case, though there has been judicial expression to the effect that a lower court has that right where justice requires: Hann v. Ellis Land Co., 105 Pitts. L. J. 81 (1957); contra, Pirri v. Clark, 31 Del. Co. 391, 57 York 17 (C. P. Del., 1942); Harris v. Greenberg, 17 D. & C. 2d 166 (C. P. No. 6 Phila., 1958). We merely take the position that under the pronouncements of our own Supreme Court, and under rules 126 to 128, we have the right, where justice and reasonableness both require, to interpret rule 4011(d) in the light of the circumstances of the particular case, so as to produce a just result and prevent an unreasonable one.

Accordingly, we enter the following:

### ORDER

And now, to wit, February 2, 1966, upon consideration of the motion of plaintiff for production of documents by defendant in the above-entitled case, the court hereby orders defendant to produce to plaintiff within 15 days, for inspection and copying by plaintiff, any written statement, signed or unsigned, made by plaintiff's decedent heretofore to any employe or representative of defendant or its insurer, if any, and any memoranda or records made by such employe or representative of declarations of plaintiff's decedent at, or

soon after, the time thereof, relating to the alleged accident, and consequences thereof, constituting the basis of the instant suit.